* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and oral arguments before the Full Commission. The appealing parties have not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Holmes, with modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All Parties are properly before the North Carolina Industrial Commission and the Industrial Commission has jurisdiction over the Parties and the subject matter of this claim. The Parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. All Parties have been correctly designated and there is no question as to misjoinder or non-joinder of Parties.
3. This case is subject to the North Carolina Workers' Compensation Act.
4. The employee's average weekly wage is $478.54 yielding a compensation rate of $319.04.
 * * * * * * * * * * *
Based upon all the competent evidence of record and reasonable inferences drawn therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On August 19, 2003, plaintiff and Bruce Scearcy were moving a steel head weighing between 200 and 1,000 lbs. when the head fell and hit plaintiff's right foot. Both plaintiff and Scearcy observed plaintiff's foot immediately following the accident and observed that plaintiff's foot was red and swollen and there was blood on plaintiff's sock. Scearcy had not noticed anything unusual pertaining to plaintiff's foot prior to the accident. The accident was reported to plaintiff's employer that same evening.
2. That evening plaintiff's foot was sore. He soaked it in Epsom salts and warm water. When he awoke the following morning, his foot was very painful and his little toe was dark. He went to his employer and asked to be sent to a doctor for examination.
3. Plaintiff was seen the morning of August 20, 2003, by nurse practitioner Donna Stedman, and was immediately referred to a general surgeon. Plaintiff saw Dr. James O. Wyatt, III, a general surgeon, that same morning.
4. Dr. Wyatt examined plaintiff's foot and found necrosis and wet gangrene, and scheduled plaintiff for amputation of his right little toe the following day. Dr. Wyatt found physical evidence of trauma at the time of his initial examination. Plaintiff underwent two surgical procedures for amputations of his toes by Dr. Wyatt, and his care was then transferred to Dr. Duda.
5. Dr. Duda is an orthopedic surgeon with a sub-specialty in feet and ankles. He has a special interest in treating diabetic feet. Dr. Duda performed a mid-foot amputation of plaintiff's right foot and continues to see plaintiff for ongoing treatment.
6. Plaintiff had been diagnosed with diabetes in 1980. Prior to this injury he had controlled his diabetes with exercise and diet. Plaintiff regularly checked his blood sugars and daily checked his feet with a mirror for any breaks in the skin or irritation.
7. Prior to this accident, plaintiff was physically active at work performing heavy lifting, climbing, walking, and standing. He was employed in maintenance and had not missed any days from work for sickness or illness in the year prior to the accident. In addition, plaintiff was physically active outside of work where he danced, walked, jogged, bowled, and rode a bike. Plaintiff was not having any problem with his right foot prior to the accident.
8. Dr. Wyatt physically observed plaintiff's foot the day following the accident and found evidence of trauma requiring surgery. He testified, and the Full Commission finds as fact, that the necrosis and wet gangrene that he observed developed following the trauma and was not present prior to the injury.
9. Dr. Duda treated plaintiff and reviewed his prior medical and hospital records. Dr. Duda concluded, and the Full Commission finds as fact, that plaintiff developed necrosis and wet gangrene in his right foot following the accident on August 19, 2003, and that as a result of the trauma, plaintiff required surgeries eventually leading to a mid-foot amputation. Dr. Duda further testified, and the Full Commission finds as fact, that it takes only 6-9 hours for necrosis and wet gangrene to develop in a diabetic foot following trauma.
10. Donna Stedman deferred to Dr. Wyatt and Dr. Duda as to causation. Prior to her deposition, Ms. Stedman opined to the employer that she thought plaintiff's condition was not the result of trauma.
11. Dr. Sebold did not examine or treat the patient and relied on assumptions and speculation in forming his opinions. He agreed with Ms. Stedman's opinion that plaintiff's condition was not the result of trauma. The Full Commission gives greater weight to the opinions of Dr. Wyatt and Dr. Duda. As treating physicians there were in a better position to observe plaintiff's medical condition.
12. Plaintiff has been disabled from any type of employment since the date of the accident and continues to remain disabled.
13. Defendants took the position that plaintiff was not taking proper care of his diabetic condition and would have eventually lost the use of the injured foot through diabetic deterioration. While that is a speculative possibility, the facts are that plaintiff's diabetic condition was well enough managed so that he was able to work and earn a living prior to the injury, but was not after and as a consequence of the injury.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reaches the following additional:
 CONCLUSIONS OF LAW
1. On August 19, 2003, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. As a result of the August 19, 2003 accident, plaintiff developed necrosis and wet gangrene in his right foot which led necessarily to an initial amputation of his little toe followed by further surgeries including a mid-foot amputation. N.C. Gen. Stat. §97-2(6).
2. Plaintiff has been disabled since August 19, 2003, as a result of his compensable injury by accident. N.C. Gen. Stat. § 97-29.
3. As a result of his compensable injury by accident, plaintiff is entitled to temporary total disability compensation in the amount of $319.04 per week from August 19, 2003, and continuing until further order from the Commission. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to receive medical treatment so long as such treatment effects a cure, alleviates plaintiff's pain, or reduces plaintiff's disability, with Dr. Duda as the authorized treating physician. N.C. Gen. Stat. § 97-25.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay for all medical treatment incurred or to be incurred as a result of plaintiff's compensable injury by accident of August 19, 2003 as long as such treatment tends to effect a cure, give relief, or lessen plaintiff's period of disability. Said treatment includes, but is not limited to all treatment recommended by Dr. Wyatt and Dr. Duda as a result of plaintiff's compensable injury by accident.
2. Subject to an attorney fee provided below, defendants shall pay to plaintiff $319.04 per week as temporary total disability compensation from August 19, 2003 and continuing until he returns to work or until further order from the Industrial Commission. Defendants shall pay the amount that has accrued to the date of this order to plaintiff in one lump sum, minus one fourth thereof, which defendants shall pay directly to plaintiff's attorney. Defendants shall pay 8 percent interest in accordance with the law.
3. An amount of 25% of the compensation benefits ordered paid to plaintiff in paragraph 2 of this award is approved as attorney fees. After paying plaintiff's counsel portion of the accrued benefits to plaintiff's counsel, defendant shall thereafter send every fourth check directly to plaintiff's counsel.
4. Defendants shall pay the costs, including expert witness fees or $165.00 to Donna Stedman, Nurse Practitioner, and $375.00 to Dr. James O. Wyatt, III if not paid pursuant to prior order.
This 13th day of March 2006.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_________________ BUCK LATTIMORE CHAIRMAN
 S/_________________ DIANNE C. SELLERS COMMISSIONER